UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
                              )
SEDRICK HAMILTON,             )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civ. Action No. 08-2052 (EGS)
                              )
SANOFI-AVENTIS U.S., INC.     )
                              )
          Defendant.          )
                              )
_____)
```

**MEMORANDUM OPINION**

Sedrick Hamilton ("Plaintiff") has brought a two-count complaint against his employer, pharmaceutical company Sanofi-Aventis ("Defendant" or "the company"). Count I alleges that Defendant violated the D.C. Human Rights Act by harassing Plaintiff because of his disability, refusing to provide reasonable accommodation for his disability, and discharging him, at least in part, because of his disability. Plaintiff alleges in Count II that Defendant committed the common law tort of false imprisonment by restraining him in a storage space by duress.

Defendant has filed a motion to dismiss Count II pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendant contends that the D.C. Workers' Compensation Act ("WCA") governs this claim, which in turn would mean that an administrative agency – the D.C. Department of Employment Services ("DOES" or "the agency") – has primary

jurisdiction to adjudicate the claim.  Defendant argues in the alternative that Plaintiff has failed to state a claim of false imprisonment because he failed to allege that he was physically restrained.  Upon consideration of the motion, response and reply thereto, the applicable law, and the entire record herein, the Court **GRANTS** Defendant's motion to dismiss Count II of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

**I.  Background**

    **A.  Factual Background[1]**

As a result of severe bacterial meningitis contracted in June 2000, Plaintiff has disabilities stemming from the amputation of three toes, hard calluses on his heels and the balls of his feet, and chronic pain.  Compl. ¶ 7.  Plaintiff has also suffered from periodic migraine headaches since an automobile accident that occurred in 2005.  Compl. ¶ 7.

Plaintiff was hired by Defendant's District Manager, Maria Thompson ("Thompson"), to work as a specialty sales representative, and began working on February 16, 2006.  Compl. ¶ 8. As a condition of taking the job, Plaintiff notified Thompson in the interview that he could work full days as long as he was permitted to take periodic breaks – typically four fifteen-minute breaks over the course of the day.  Compl. ¶¶ 12, 20.  Thompson

---

[1] Consistent with the standard of review at the Rule 12 stage, this section presents the facts as alleged by Plaintiff in his complaint.

accepted this condition as long as Plaintiff made eight sales calls a day and created a productive work schedule.  Compl. ¶ 12.  Nevertheless, the allegations in Plaintiff's complaint make clear that, from Plaintiff's perspective, there exists a contentious relationship between himself and Thompson relating to his performance and the extent to which his physical disability enables him to perform his job satisfactorily.

   For example, during a first ride-along, Thompson asked Plaintiff how he was feeling, and he confessed that he was having migraine headaches.  Compl. ¶ 15.  She expressed dissatisfaction with the confession because it showed he could not handle the work, and she subsequently gave him a mediocre job review.  Compl. ¶ 15-16.  After a second ride-along, Thompson gave Plaintiff a poor job review.  Compl. ¶ 19.  This stands in contrast to a laudatory review that he received from the Acting District Manager, Michael Bienick, who filled in for Thompson while she was on maternity leave.  Compl. ¶¶ 16-17.  Thompson also allegedly sent a derogatory memorandum concerning Plaintiff's performance after he complained to Human Resources regarding Thompson's treatment of him.  Compl. ¶¶ 22-23.  Plaintiff claims to have requested a meeting with Thompson to discuss his progress and their relationship, which Thompson refused.  Compl. ¶ 26.  Finally, Thompson and Defendant's Regional Manager accused Plaintiff of refusing to respond to their phone calls despite the

fact that he had a medical appointment when they called. Compl. ¶ 27.

Plaintiff's false imprisonment claim arises out of events that took place on October 12, 2007. On that day, Thompson and Tom Hersh ("Hersh"), Defendant's auditor, requested that Plaintiff meet them at the Washington Hotel. Compl. ¶ 28. Thompson and Hersh announced that they were randomly auditing the Arlington, VA storage unit provided by the company in which Plaintiff maintained his inventory of marketing materials and pharmaceutical product samples. Compl. ¶ 28. Per company policy, Plaintiff had to be present for the audit and within eyesight during the entire audit. Compl. ¶ 29. As a part of the audit, Thompson requested that Plaintiff assist them in moving some items contained in the storage unit. Compl. ¶ 30. Plaintiff pointed out that he had a disability and asked if he could change from his dress shoes into different shoes that were located in his car, but Thompson refused to allow Plaintiff to go to his car and required him to stand and walk for the entire audit. Compl. ¶ 31.

Plaintiff complains that he sustained injuries to his feet as his heel bone "slashed through his flesh" as a result of the physical labor from the audit. Compl. ¶ 39. Eventually, Plaintiff contacted Defendant's Human Resources Representative, Scott Rew ("Rew"), and apprised him of the situation. Compl. ¶ 33. Rew told Plaintiff to document the situation and also told Thompson that Plaintiff was not required to perform any physical

4

labor. Compl. ¶ 33. Thompson nevertheless required Plaintiff to stand while the audit continued. Compl. ¶ 34. Plaintiff complied for part of the time, but eventually the pain of standing became so unbearable that he returned to his car. Compl. ¶¶ 34-35.

After the storage-unit audit, Thompson ordered Plaintiff to leave the car while Hersh and Thompson audited the car. Compl. ¶ 35. Hersh then accompanied Plaintiff in Plaintiff's car to the Washington Hotel where the three would review the results of the audit. Compl. ¶ 37. Plaintiff, however, cut short the audit review because of the severe pain in his feet. He left after his friend – an attorney whom Plaintiff had called for help – arrived at 6:39 p.m. Compl. ¶ 38. According to the complaint, the injury caused from this incident resulted in a severe pain and required one surgery. Compl. ¶ 40. After returning from medical leave, Plaintiff's employment was terminated as of May 28, 2008. Compl. ¶ 41.

### B. Procedural Background

Plaintiff filed a complaint against Defendant in the Superior Court of the District of Columbia on October 9, 2008. Defendant removed the case to this Court based on diversity jurisdiction and subsequently filed a motion to dismiss Count II of the complaint (the false imprisonment claim).[2]

---

[2] Plaintiff argues that Defendant's failure to address Count I (the discrimination claim) was tantamount to defaulting on that count. Defendant responds that it has not defaulted on Count I because it filed a motion to dismiss, which permits a defendant to delay the

Plaintiff opposes Defendant's motion and requests that the Court strike the Background section contained therein, arguing that the section contains facts that "directly contradict the allegations of the Complaint." Pl.'s Opp'n at 2. Defendant responds that "[it] did not intend for the information presented in the Background section to be considered for any other purpose and, in fact, acknowledged that this Court is bound to consider the facts in the Complaint as true for purposes of this Motion." Def.'s Reply at 2 n.1. The Court agrees with Defendant that the Background section need not be struck; the section will, however, be ignored insofar as Defendant presents facts in contradiction to the facts set forth in the complaint.

**II.  Discussion**

   **A.  Standard of Review**

On a motion to dismiss for lack of jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the Court's

---

submission of an answer until the motion is denied or its disposition is postponed until trial. The Court concludes that Defendant has not defaulted on Count I despite its failure to file an answer within the specified time limit. *See Hinson v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 34 (D.D.C. 2007) (noting that no answer had been filed to one of the plaintiff's claim, "notwithstanding the fact that Defendants did not move to dismiss that claim and that their time to answer has long since passed," and ordering defendants to file an answer); Fed. R. Civ. P. 12(a)(4)(A) (recognizing that a motion to dismiss alters the time limit for filing an answer). In the Order accompanying this Memorandum Opinion, the Court therefore directs Defendant to file an answer to Count I of the complaint.

jurisdiction.  *See, e.g.*, he plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In deciding a 12(b)(1) motion, moreover, the court must give the plaintiff's factual allegations closer scrutiny than would be required for a Rule 12(b)(6) motion because subject-matter jurisdiction focuses on the Court's power to hear the claim.  *See Uberoi v. EEOC*, 180 F.Supp.2d 42, 44 (D.D.C. 2001). "Additionally, a court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing cases).

### B. Applicability of the WCA

The WCA requires employers to provide compensation to employees who are injured in the course of their employment where the injury occurs in the District or the employment is "localized principally" therein.  D.C. Code §§ 32-1501(12), 32-1503(a)(1)-(2).  For injuries covered under the WCA, the statute provides "the employee's exclusive remedy against the employer."  *Id.* § 32-1504(b); *see Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985) (explaining that the WCA "deprives employees and their representatives of the right to pursue common law tort suits . . . against their employers or co-workers if the injuries are covered

by the Act" (internal quotation marks omitted)).  The definition of "injury" in the WCA includes the "willful act[s] of third persons," but does not apply to the intentional acts of the employer.  D.C. Code § 32-1501(12); *see Grillo v. Nat'l Bank of Wash.*, 540 A.2d 743, 748 (D.C. 1988) ("[B]y definition, injuries to an employee that are *intended* by the employer fall outside of the WCA's exclusivity provisions, even though they are work-related, because they are nonaccidental." (emphasis in original)).  Where the employer is a corporation, however, only actions by an individual "who is realistically the alter ego of the corporation and not merely a foreman, supervisor or manager" can be treated as the intentional acts of the employer itself.  *Rustin*, 491 A.2d at 501 (internal quotation marks omitted).

"[W]hen there is a 'substantial question' whether the WCA applies, the administrative agency charged with implementing the statute, given its special expertise, has 'primary jurisdiction' to 'make the initial determination concerning coverage' before the courts can exercise jurisdiction."  *Estate of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 631 (D.C. 1995) (quoting *Harrington v. Moss*, 407 A.2d 658, 661 (D.C. 1979)); *see Grillo*, 540 A.2d at 750 (explaining that a substantial question exists unless the injuries are "clearly not compensable" under the WCA (emphasis and internal quotation marks omitted)); *see also* Daniel Keating, Comment, *Employee Injuries Cases: Should Courts or Boards*

*Decide Whether Workers' Compensation Laws Apply?*, 53 U. Chi. L. Rev. 258, 266-67 (1986) ("Under the substantial question approach, jurisdiction to determine jurisdiction rests primarily with the board.  Only if there is no 'substantial question' – that is, if a court views all factual questions as settled in a given action – can a court make the 'pure law' determination of which law applies.").  And because the WCA contains a number of presumptions that favor coverage, the employee bears the burden of proving that the WCA does not apply.  *See Harrington*, 407 A.2d at 662-63.

Defendant argues that Plaintiff's injury falls under the WCA because (1) it was "plainly 'accidental' within the meaning of the WCA," (2) it arose out of and in the course of his employment, and (3) Plaintiff's employment was localized principally within the District.  Def.'s Mem. P. & A. Supp. Mot. Dismiss ("Def.'s Mem.") at 6-7.  In addition, Defendant contends that neither Thompson nor Hersh qualifies as "realistically the alter ego" of Defendant, so that any intentional actions by them cannot be imputed to the company.  Def.'s Mem. at 6.  Alternatively, Defendant points out that even if the Court disagrees that the injury is clearly compensable under the WCA, a substantial question about the applicability of the WCA is sufficient to require dismissal of Count II.  Def.'s Mem. at 4-5.

Plaintiff does not contest that the injury arose out of and in the course of his employment or that his employment was

9

localized principally within the District.[3]  He emphasizes, however, that only "accidental" acts fall under the WCA, and contends that he has alleged facts showing that (1) while conducting an audit of the storage unit, Thompson and Hersh were acting directly with the full authority and as the alter ego of the corporate entity; and (2) Thompson's actions "reveal the deliberate actions of a manager intending to injure the Plaintiff and intending specifically to create the harm that resulted." Pl.'s Opp'n at 2-3.

Under the legal standards discussed above, Plaintiff's claim can only survive Defendant's 12(b)(1) motion if the facts he has alleged leave no substantial question that the company intended to

---

[3] Plaintiff does rely on *Estate of Underwood*, 665 A.2d 621, to argue that his claim does not fall under the WCA because that statute "does not compensate emotional distress claims arising out of discriminatory acts."  Pl.'s Opp'n at 3.  In that case, the court held that it, not the agency, had primary jurisdiction over the plaintiff's intentional infliction of emotional distress claim arising from pervasive sexual harassment by a supervisor.  The court concluded as a matter of law that sexual harassment is not a "'risk involved in or incidental to' employment," and reasoned that because the plaintiff's emotional distress arose out of the sexual harassment, the claim was not covered by the WCA.  *Id.* at 634 (quoting *Fazio v. Cardillo*, 109 F.2d 835, 836 (D.C. Cir. 1940).  To the extent that Plaintiff's reliance on this case is an attempt to argue that the injuries about which he complains did not arise out of and in the course of his employment, his argument is unpersuasive, because his claim is easily distinguishable from the circumstances presented in *Estate of Underwood*.  Plaintiff's injuries arose out of the conditions presented by the auditing of his storage space; namely, that he was required to stand for long periods of time.  Unlike the plaintiff in *Underwood*, his injuries are directly traceable to that activity, which he does not dispute was a standard part of his employment.  Thus, even if Thompson required him to remaining standing because of a discriminatory animus, this is not a situation where the claim arises out of something that is not a risk incidental to employment.  *Cf. id.* at 633 n.18 (distinguishing from a claim "grounded only in part on" a discriminatory act).

injure Plaintiff during the audit at the storage space.  To reach that conclusion, moreover, the Court would have to find that Thompson and/or Hersh were "realistically the alter ego" of Defendant and that they acted with the specific intent to injure Plaintiff.  *See Grillo*, 540 A.2d at 744 (holding that "only injuries specifically intended by employer to be inflicted upon the particular employee who is injured fall outside the exclusivity provisions of the WCA"); *see also Underwood*, 665 A.2d at 633 n.19 (explaining that to show intent, the board of directors had to do more than *know* that the plaintiff would be hurt – the board of directors would have had to have *intended* for the plaintiff to be injured to conclude that the harm was intentional rather than accidental within the meaning of the WCA).

Plaintiff's complaint does not permit such a finding by the Court.  At the very least, there exists a substantial question as to whether, as Plaintiff argues, "Thompson and Hersh were conducting an audit of the storage unit and were acting directly with the full authority and as the alter ego of the corporate entity."  Pl.'s Opp'n at 3.  There is also a substantial question as to whether, assuming that Thompson and Hersh *were* Defendant's alter egos, they acted with the specific intent to harm Plaintiff. In short, because there is a substantial question as to whether Plaintiff's claim for injuries arising from his alleged false imprisonment is covered under the WCA, the claim must be brought

before DOES in the first instance.  This Court therefore concludes that it lacks jurisdiction over Count II and that Defendant's motion to dismiss should be granted pursuant to Rule 12(b)(1).[4]

**III.  Conclusion**

Accordingly, for the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss Count II of the complaint. An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **June 24, 2009**

---

[4] Having concluded that dismissal of Count II is required under Rule 12(b)(1), the Court need not reach Defendant's contention that Count II should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).